IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AMERICAN CREDIT ACCEPTANCE, LLC,<br><br>**Plaintiff,**<br><br>v.<br><br>**PATRIOT CREDIT CORPORATION, FREEDOM AUTO SALES, INC., MARK B. DAVIS, KENNETH E. DAVIS, and JOHN M. WEDDIGE,**<br><br>**Defendants.** | CIVIL ACTION NO. 1:15-CV-388 |

## COMPLAINT

**COMES NOW** Plaintiff American Credit Acceptance, LLC ("ACA"), by and through its undersigned counsel, and for its Complaint against Defendants Patriot Credit Corporation ("PCC"), Freedom Auto Sales, Inc. ("Freedom Auto"), Mark B. Davis ("M. Davis"), Kenneth E. Davis ("K. Davis"), and John M. Weddige ("Weddige") (hereinafter referred to collectively as the "Defendants"), states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. ACA is a South Carolina limited liability company qualified to do business in the State of Texas with its principal place of business located in the State of South Carolina. ACA's members are citizens of South Carolina, Georgia, and Illinois.

2. PCC is a Texas corporation with its principal office located in Austin, Texas. Patriot may be served through its registered agent for service of process, Ken E. Davis at 7600 Berrycone Cove, Austin, Texas 78750.

23335514 v2

3. Freedom Auto is a Texas corporation with its principal office located in Austin, Texas. Freedom may be served through its registered agent for service of process, Ken E. Davis at 5829 Burnet Road, Austin, Texas 78756.

4. M. Davis is a natural person over the age of 21 and is, upon information and belief, a citizen of Texas.

5. K. Davis is a natural person over the age of 21 and is, upon information and belief, a citizen of Texas.

6. Weddige is a natural person over the age of 21 and is, upon information and belief, a citizen of Texas.

7. This Court has personal jurisdiction over the Defendants, each of whom is a citizen of Texas.

8. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

**FACTUAL ALLEGATIONS**

A. **The Credit Agreement and Defendants' Breach Thereof.**

10. On or around August 23, 2013, ACA and Defendants entered into a Credit Agreement whereby ACA loaned PCC money for use by the latter in financing retail installment sales contracts ("Receivables") with consumers for automobile purchases. A true and correct copy of the Credit Agreement is attached hereto as **Exhibit 1**.

11. Freedom Auto, M. Davis, K. Davis and Weddige each signed the Credit Agreement as guarantors. *See* Ex. 1.

12. A dispute subsequently arose regarding Defendants' performance under the Credit Agreement at a time when Defendants' outstanding liability to ACA under the aforementioned Credit Agreement was in excess of $1 million.

13. This dispute resulted in ACA filing a January 21, 2014 lawsuit against Defendants, styled *American Credit Acceptance, LLC v. Patriot Credit Corporation, et al.*, No. D-1-GN-14000204 in the District Court of Travis County, Texas (the "Lawsuit").

B. **The Settlement Agreement.**

14. On or about March 24, 2014, ACA and Defendants entered into a Settlement and Release Agreement (the "Settlement Agreement"), which resolved the Lawsuit and made arrangements for resolution of the balance due under the Credit Agreement. A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit 2**.

15. One of Defendants' obligations under the Settlement Agreement was to transfer certain Receivables to ACA, including the following three Receivables, which are hereinafter referred to collectively as the "Subject Receivables":

- A retail installment contract entered by M. De Leon ("De Leon") for the purchase of a 2006 Chevrolet Tahoe (the "Tahoe");

- A retail installment contract entered by S. Fuentes ("Fuentes") for the purchase of a 2006 Ford Fusion (the "Fusion"); and

- A retail installment contract entered by R. Morgan ("Morgan") for the purchase of a 2005 Pontiac G6 (the "G6").

(*See* Exhibit 2, Section I-A(5), and Exhibit A thereto.)

16. The Settlement Agreement required Defendants "to provide to ACA all remaining outstanding vehicle titles and related documents" for the Subject Receivables. (*Id.*, Section I-A(7).)

17. The Settlement Agreement further required Defendants "to notify ACA within two ('2') business days of any vehicle that comes into the possession of PCC, or any PCC party, that is securing" the Subject Receivables and, in such instances, to "make the vehicle available for pickup by ACA or its designated agent." (*Id.*, Section I-A(15).)

18. Defendants also agreed, under the Settlement Agreement, "not to repossess, or attempt to repossess or order the repossession of any car securing" the Subject Receivables. (*Id.*, Section I-A(17).)

19. Significantly, the Settlement Agreement entitles ACA to enforce its rights (including all amounts due and owing) under the Credit Agreement if Defendants breach any provision of the Settlement Agreement. (*See id.*, Sections I-C and I-E.)

20. The Settlement Agreement also provides that ACA is entitled to its reasonable fees and costs in any action to enforce the Settlement Agreement. (*See id.*, Section III-M.)

    C.    **Defendants' Breach of the Settlement Agreement.**

        *1.*    *Defendants Fail to Deliver the Certificates of Title for the Subject Vehicles.*

21. Despite ACA's repeated demands and Defendants' contractual obligation to do so as outlined in the Settlement Agreement, Defendants failed to deliver the certificates of title (the "Subject Titles") to ACA for the Tahoe, Fusion, and G6 (the "Subject Vehicles").

22. Defendants' failure to deliver the Subject Titles damaged ACA in a number of ways, including, without limitation, by preventing ACA from perfecting its valid security interests in the Subject Vehicles.

        *2.*    *Defendants Obtain Possession of the Fusion and Sell the Same Without ACA's Permission.*

23. Unbeknownst to ACA, Defendants came back into possession of the Fusion.

24. Despite their contractual obligation to do so as outlined in the Settlement Agreement, Defendants did not notify ACA that they had obtained possession of the Fusion.

25. Moreover, and in further violation of their contractual obligations under the Settlement Agreement, Defendants sold the Fusion to a third party, W. Zanders ("Zanders"), without ACA's knowledge or permission.

26. At all relevant times, ACA reasonably believed that the Fusion was still in the possession of its consumer, De Leon.

27. On or about March 18, 2015, and following a payment default by De Leon, ACA repossessed the Fusion.

28. When ACA subsequently learned that the Fusion had been resold (albeit improperly) to Zanders, it returned the Fusion to Zanders.

29. Defendants' resale of the Fusion without ACA's knowledge or permission has damaged ACA in a number of ways, including, without limitation, by impairing ACA's security interest in the Fusion.

### 3. *Defendants Obtain Possession of the Tahoe and Sell the Same Without ACA's Permission.*

30. Unbeknownst to ACA, Defendants came back into possession of the Tahoe.

31. Despite their contractual obligation to do so as outlined in the Settlement Agreement, Defendants did not notify ACA that they had obtained possession of the Tahoe.

32. Moreover, and in further violation of their contractual obligations under the Settlement Agreement, Defendants sold the Tahoe to a third party, B. Barnett ("Barnett"), without ACA's knowledge or permission.

33. At all relevant times, ACA reasonably believed that the Tahoe was still in the possession of its consumer, De Leon.

34. Defendants' resale of the Tahoe without ACA's permission has damaged ACA in a number of ways, including, without limitation, by impairing ACA's security interest in the Tahoe.

### 4. *Defendants Obtain Possession of the G6 and Sell the Same Without ACA's Permission.*

35. Unbeknownst to ACA, Defendants came back into possession of the G6.

36. Despite their contractual obligation to do so as outlined in the Settlement Agreement, Defendants did not notify ACA that they had obtained possession of the G6.

37. Moreover, and in further violation of their contractual obligations under the Settlement Agreement, Defendants sold the G6 to a third party, S. Nyeri ("Nyeri"), without ACA's knowledge or permission.

38. At all relevant times, ACA reasonably believed that the G6 was still in the possession of its consumer, Morgan.

39. On or about April 3, 2015, and following a payment default by Morgan, ACA repossessed the G6.

40. When ACA subsequently learned that the G6 had been resold (albeit improperly) to Nyeri, it returned the G6 to Nyeri.

41. Defendants' resale of the G6 without ACA's knowledge or permission has damaged ACA in a number of ways, including, without limitation, by impairing ACA's security interest in the G6.

### COUNT I – BREACH OF CONTRACT

42. ACA adopts and incorporates all preceding paragraphs as if fully set forth herein.

43. ACA has complied with its contractual obligations under the Settlement Agreement.

44. Defendants have materially breached the Settlement Agreement, including, without limitation, by failing to deliver certificates of title for the Subject Vehicles and by failing to notify ACA when they came into possession of the Subject Vehicles.

45. Defendants' actions have caused ACA damages, including without limitation an impairment of ACA's security interests in the Subject Vehicles.

46. As a result of the aforementioned breaches and pursuant to Section 1-C and 1-E of the Settlement Agreement, ACA hereby demands the remaining balance of **$214,642.90** under the Credit Agreement to be immediately due and payable, which includes $115,397.85 in principal, $53,803.35 in interest, $12,067.78 in unpaid expenses, and $33,373.92 in legal fees.

47. ACA is also entitled to its costs and reasonable attorneys' fees incurred in connection with the prosecution of this action.

48. All conditions precedent have been satisfied prior to the filing of this action.

**WHEREFORE, PREMISES CONSIDERED**, ACA demands a judgment against Defendants for the remaining balance of $214,642.90 under the Credit Agreement, actual damages in an amount be determined at trial, plus pre-judgment interest, post-judgment interest, attorneys' fees, costs, and any other and further relief as this Court deems just and appropriate.

### COUNT II – CONVERSION

49. ACA adopts and incorporates all preceding paragraphs as if fully set forth herein.

50. ACA was entitled to possession of the Subject Titles in order to perfect its valid security interests in the Subject Vehicles.

51. Defendants willfully and knowingly withheld the Subject Titles from ACA.

52. Defendants' willful withholding of the Subject Titles has caused ACA damages, including but not limited to significant impairment of the value of ACA's security interests in the Subject Vehicles.

**WHEREFORE, PREMISES CONSIDERED**, ACA demands a judgment against Defendants for actual damages in an amount be determined at trial, plus pre-judgment interest, post-judgment interest, punitive damages, and any other and further relief as this Court deems just and appropriate.

## COUNT III - FRAUD

53. ACA adopts and incorporates all preceding paragraphs as if fully set forth herein.

54. Defendants represented that they would notify ACA if and when they came into possession of any of the Subject Vehicles.

55. Defendants also represented that they would deliver the Subject Titles to ACA.

56. Defendants intentionally failed to deliver the Subject Titles.

57. Defendants also intentionally failed to notify ACA when they came into possession of the Subject Vehicles.

58. Defendants intentionally withheld this material information from ACA with the intent to fraudulently resell the Subject Vehicles free and clear of ACA's liens.

59. ACA justifiably and detrimentally relied upon Defendants' material omissions.

60. ACA suffered damages as a direct result of its justifiable reliance upon Defendants' fraudulent conduct.

**WHEREFORE, PREMISES CONSIDERED**, ACA demands a judgment against Defendants for actual damages in an amount be determined at trial, plus pre-judgment interest, post-judgment interest, punitive damages, and any other and further relief as this Court deems just and appropriate.

Respectfully submitted this 12th day of May, 2015.

                                  */s/ Reid S. Manley*
                                  Reid S. Manley (TX Bar No. 24047520)

**OF COUNSEL**:
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
rmanley@burr.com

Attorney for Plaintiff
AMERICAN CREDIT ACCEPTANCE, LLC